UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

SEP 7 2016

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES OF AMERICA

v.

GARY J. STERN

No. 14 CR 580

Judge Harry D. Leinenweber

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant GARY J. STERN, and his attorney, JEFFREY B. STEINBACK, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with interfering with the administration of the internal revenue laws, in violation of Title 26, United States Code, Section 7212(a) (Count One), and with aiding and assisting in the preparation and presentation to the IRS of false income tax returns, in violation of Title 26, United States Code, Section 7206(2) (Counts Two through Eight).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts Five and Seven of the indictment, which charge defendant with aiding and assisting in the preparation and presentation to the IRS of false income tax returns, in violation of Title 26, United States Code, Section 7206(2).

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Five and Seven of the indictment.    In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline §1B1.3:

The Internal Revenue Service was an agency of the United States Department of Treasury, responsible for administering and enforcing the tax laws of the United States.  The Internal Revenue Code established laws for the taxation of income.  Under these laws, individuals, sole proprietorships, partnerships, trusts, and corporations were required to report income to the IRS on income tax returns.

Under the IRC, individual and entities were allowed to reduce the amount of their taxable income through the use of certain tax credits.  IRC Section 29, renumbered as IRC Section 45K beginning January 1, 2006, permitted producers of certain fuels from nonconventional sources, including biomass (such as the methane gas produced from garbage landfills), to claim tax credits known as FNS tax credits for the production of such fuels, if such fuels were sold to an unrelated third party.

2

Under IRC Section 29, any FNS tax credits generated in years prior to 2006 which were unable to be claimed in the year they were generated could be carried forward and be used in future years only against alternative minimum tax. Under IRC Section 45K, any FNS tax credits generated in 2006 or later years which were unable to be claimed in the year generated could be carried forward and used in future years as general business credits, meaning they were not limited to reducing any alternative minimum tax.

Defendant was an attorney and an equity principal at a law firm in Chicago, Illinois. Defendant specialized in the areas of estate planning, asset protection, taxation, international law, and immigration law. Individual A was an attorney who worked at the same law firm as defendant; both Individual A and defendant were principals at this law firm. Individual A received work assignments from defendant, as well as from other attorneys at the law firm. The assignments Individual A received from defendant included the preparation of individual, partnership, and corporate tax returns.

Resource Technology Corporation was a Delaware corporation, incorporated on or about February 1, 1993, by or on behalf of a group of three of defendant's clients. These clients were among defendant's largest clients at the law firm, and in fact they were among the biggest clients of the entire firm; approximately 15 attorneys at the law firm did some sort of work for these clients. Part of the work Individual A received from defendant involved assignments for these clients, including representing them or their affiliates regarding tax issues.

3

The business purpose of Resource Technology Corporation was to develop landfill gas-to-energy projects and convert landfill gas into electricity to be sold to utility companies. Boonville Farms, Inc. was an Indiana corporation, incorporated on or about January 27, 1995, by or on behalf of defendant's clients involved with RTC.

Through the business operations of RTC related to at least 26 landfill sites throughout the United States, FNS tax credits were purportedly generated, with a total of approximately $5,342,414 of those FNS tax credits allocated to Boonville Farms for tax years 1997, 1998, and 1999. Of this total amount, approximately $5,337,103 of the FNS tax credits remained unused by Boonville Farms.

In about the summer of 2006, one of defendant's major clients approached defendant with a plan for defendant to establish a series of transactions for the clients resulting in the transfer of the remaining Boonville Farms FNS tax credits, through multiple entities, with the FNS tax credits eventually going to an entity named Merrillville Trust. The purpose and effect of these transactions was to obtain cash for the clients through the sale of the previously unused tax credits, to attempt to conceal the alleged nature and source of the FNS tax credits ultimately allocated to Merrillville Trust, and to reduce or eliminate the income tax liability of individual grantors of Merrillville Trust by the use of the FNS tax credits.

Defendant told the client that he would look into the legality of the proposed transactions, and defendant assigned Individual A to research these transactions. The initial research Individual A performed indicated that the proposed

transactions would not work, that is, under the provisions of the Internal Revenue Code, they could not legally transfer the FNS tax credits to Merrillville Trust. On or about November 2, 2006, Individual A issued a memorandum to defendant informing defendant that the Boonville Farms FNS tax credits could not legally be carried over to another entity under the type of merger transaction defendant intended to organize for the clients.

At about this time, defendant and Individual A met with the clients to discuss the FNS tax credits that had been allocated to Boonville Farms in tax years 1997, 1998 and 1999. Defendant learned that the clients had already started to receive money from investors for some of the FNS tax credits. In spite of the determination by Individual A that this could not be done legally, defendant decided to proceed with a series of transactions to transfer the FNS tax credits that had been allocated to Boonville Farms to other entities.

On or about December 19, 2006, acting under defendant's direction and supervision, Individual A signed a Certificate of Formation for a limited liability company named Gary, LLC with the state of Delaware. Portage, LLC was named as the 100% member of Gary, LLC. On or about December 21, 2006, defendant caused Gary, LLC to be established with and assigned an Employer Identification Number by the IRS, with a stated business purpose of "asset management."

Also on or about December 19, 2006, again acting under defendant's direction and supervision, Individual A signed a Certificate of Formation for a limited liability company named Portage, LLC with the state of Delaware. Merrillville

Trust was named as the 100% member of Portage, LLC. On or about December 21, 2006, defendant caused Portage, LLC to be established with and assigned an EIN by the IRS, with a stated business purpose of "asset management." Furthermore, on or about December 21, 2006, defendant caused Merrillville Trust to be established with and assigned an EIN by the IRS, with a stated business purpose of "trust."

Defendant then caused Boonville Farms and Gary, LLC to be merged as of December 30, 2006, with Gary, LLC being the surviving limited liability company, and with Portage, LLC named as the 100% member of Gary, LLC.

On or about January 3, 2007, defendant caused an Application for Registration of a Tax Shelter to be filed with the IRS for Merrillville Trust, with a tax shelter description of "Extraction of methane gas from closed landfills for Section 29 or Section 45K tax credits."

On or about April 15, 2007, Individual A, once more acting under defendant's direction and supervision, prepared three 2006 income tax returns for different entities involved in this tax shelter. First, Individual A created a 2006 U.S. Corporation Income Tax Return, Form 1120, in the name of Boonville Farms, Inc., including a Form 8827, "Credit for Prior Year Minimum Tax – Corporations," on which a minimum tax credit carryforward from 2005 was reported in the amount of $5,337,103.

Second, Individual A created a 2006 U.S. Income Tax Return for an S Corporation, Form 1120S, in the name of Portage, LLC, on which "Other credits,"

further described in a Statement attached to the return as Nonconventional Source Fuel Credit, Form 8907, were falsely reported in the amount of $5,337,103.

Third, Individual A created a 2006 U.S. Income Tax Return for Estates and Trusts, Form 1041, in the name of Merrillville Trust, on which the FNS tax credits were improperly allocated to 47 individual grantors of Merrillville Trust in the total amount of $5,337,103. Neither Individual A nor defendant was willing to sign any of these three tax returns as paid tax return preparers.

In total, the individual grantors of Merrillville Trust had invested approximately $3,770,161 with defendant's clients to obtain the FNS tax credits.

Individual A insisted on preparing and sending a letter on or about April 24, 2007, to the clients, explaining various reasons why the FNS tax credits allocated to Boonville Farms prior to 2006 could not legally be converted from alternative minimum tax credits to general business credits, and then be transferred to individual investors in Merrillville Trust. Before the letter was issued to the clients, defendant reviewed the letter and revised it. Notwithstanding defendant's revisions to the letter, the clients were upset that it had been sent to them, as it constituted documentation that the FNS tax credits shelter was illegal.

On or about October 6, 2008, Individual A, again acting under defendant's direction and supervision, prepared and issued a letter to an IRS employee in response to an audit of an individual who had claimed FNS tax credits obtained from Merrillville Trust. In this letter, Individual A explained the mechanics of how the purported FNS tax credits were generated and passed through Boonville Farms,

7

ultimately to be allocated to Merrillville Trust, in an effort to legitimize to the IRS the unlawful use of the FNS tax credits.

By defendant's own actions and by those taken by Individual A at defendant's direction, defendant aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of the above-described 2006 Portage, LLC and 2006 Merrillville Trust tax returns. As a result of these two tax returns, 55 other joint and individual Form 1040 tax returns for tax years 2006, 2007, and 2008 were prepared and presented to the IRS by at least 34 individual grantors of Merrillville Trust (and not by defendant).

With respect to Count Five of the indictment, defendant willfully assisted in, and counseled and advised, the preparation and presentation to the IRS of the above-described 2006 Portage, LLC and 2006 Merrillville Trust tax returns. As a result of these two tax returns, on or about October 23, 2008, at Chicago and elsewhere, an individual tax return and claim on behalf of Taxpayer RL, namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2007, was prepared and presented to the IRS. The return (which was not prepared by defendant) was false as to a material matter, in that defendant (who never met Taxpayer RL, who was not a client of defendant) caused the false representation that Taxpayer RL was entitled under the provisions of the IRC to claim FNS tax credits in the amount of $150,718, whereas, as defendant knew, Taxpayer RL was not entitled to such FNS tax credits. This constituted a violation of Title 26, United States Code, Section 7206(2).

Likewise, with respect to Count Seven of the indictment, defendant willfully assisted in, and counseled and advised, the preparation and presentation to the IRS of the above-described 2006 Portage, LLC and 2006 Merrillville Trust tax returns. As a result of these two tax returns, on or about October 29, 2008, at Chicago and elsewhere, an individual tax return and claim on behalf of Taxpayer JK, namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2007, was prepared and presented to the IRS. The return (which was not prepared by defendant) was false as to a material matter, in that defendant (who never met Taxpayer JK, who was not a client of defendant) caused the false representation that Taxpayer JK was entitled under the provisions of the IRC to claim FNS tax credits in the amount of $154,534, whereas, as defendant knew, Taxpayer JK was not entitled to such FNS tax credits. Once again, this constituted a violation of Title 26, United States Code, Section 7206(2).

## Maximum Statutory Penalties

7.     Defendant understands that each of the charges to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 3 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

b.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each of the two charges to which he has pled guilty, in addition to any other penalty imposed.

c.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 6 years' imprisonment.   In addition, defendant is subject to a total maximum fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greater, a period of supervised release, and special assessments totaling $200.   Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500.

## **Sentencing Guidelines Calculations**

8.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence

10

disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     The base offense level is 24 pursuant to Guidelines §§2T1.4(a)(1) and 2T4.1(J), because the intended tax loss, $5,337,103, was more than $3,500,000 and not more than $9,500,000.

ii.     Pursuant to Guideline §2T1.4(b)(2), the offense level is increased two levels because the offense involved sophisticated means.

iii.     Pursuant to Guideline §3B1.1(c), the offense level is increased two levels because the defendant was a supervisor of a participant in the criminal activity.

iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of

11

Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

          v.      In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

          c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

          d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 25, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 57 to 60 months' imprisonment, in addition to any supervised release and fine the Court may impose.

          e.      Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-

12

binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

13

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant agrees that pursuant to Title 18, United States Code, Section 3663(a)(3), the Court shall order defendant to make restitution to the IRS in an amount of $397,949 (the total amount of FNS tax credits illegally claimed on 2006, 2007, or 2008 income tax returns of grantors of Merrillville Trust that were not audited and thus were not recovered by the IRS), which amount shall reflect credit for any funds repaid by defendant prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 580.

18.    This Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

19.    Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.  Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

20.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

16

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.    **Appellate rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

        21.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights

specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to

the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

25.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

27.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its

option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney.     Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _____9 - 7 - 2016_____


_____
ZACHARY T. FARDON
United States Attorney

_____
GARY J. STERN
Defendant


_____
STEPHEN L. HEINZE
Assistant U.S. Attorney

_____
JEFFREY B. STEINBACK
Attorney for Defendant